LOBER v. SKLAR.

LYNN v. SAME.

1. AUTOMOBILES—MOTORCYCLES—INTERSECTIONS—THROUGH HIGHWAYS—SPEED—NEGLIGENCE.
    Whether westbound defendant motorist on cross street, who had stopped before entering intersection with through highway and had proceeded past center line thereof when hit by southbound motorcycle on which plaintiff minors were riding, was guilty of negligence was properly left to jury, where testimony was in conflict as to speed of motorcycle.

2. SAME—MOTORCYCLES—INTERSECTIONS—UNAVOIDABLE ACCIDENT—INSTRUCTIONS—CORRECTIVE SUGGESTION.
    Instruction in action arising from collision at intersection between westbound motorist and southbound motorcyclist that "if the accident was unavoidable and did not result from any negligence of the defendant, then there can be no recovery

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic § 321 et seq.
[3] 53 Am Jur, Trial § 842.

by either plaintiff" although erroneous, was not reversible, in view of proper instructions given on issues of negligence, proximate cause and contributory negligence, where neither party gave corrective suggestions.

3. APPEAL AND ERROR—INSTRUCTIONS—CHARGE AS A WHOLE.
  The presence or absence of reversible error in jury instruction is properly judged by reading and considering the charge as a whole.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted June 5, 1959. (Docket Nos. 42, 43, 44, 45, Calendar Nos. 48,034, 48,035, 48,036, 48,037.) Decided July 14, 1959. Rehearing denied October 12, 1959.

Case by Alan Lober, a minor by his next friend, Esther Lober, against Eugene Sklar, Elmer Marcus and Lillian Marcus for personal injuries sustained in collision of motorcycle and automobile. Similar action by Wilson B. Lynn, a minor by his next friend, Jean Lynn. Derivative suits by Mack Lober and John Lynn.

Four cases consolidated for trial and appeal. Verdict and judgment for defendants. Plaintiffs appeal. Affirmed.

*I. Goodman Cohen,* for plaintiffs.

*Cary, BeGole & Martin (Laurence A. Bohall,* of counsel), for defendants.

BLACK, J. Four suits for negligence are before us. Two of the 4 are derivative. All were consolidated for trial to court and jury. The jury found in favor of defendants with respect to all causes. Judgment thereupon entered according to the common verdict. Plaintiffs appeal.

Plaintiff Wilson B. Lynn was riding his motorcycle in a southerly direction on Wyoming avenue, in Detroit, approaching the intersection of Thatcher avenue. Plaintiff Alan Lober was riding on the rear seat of the motorcycle. Defendant Eugene Sklar, driving an automobile owned by defendants Marcus, approached the intersection on Thatcher from the east. Wyoming is a so-called "through street." Traffic approaching Wyoming from either direction on Thatcher is required to stop, prior to entry into the intersection, by command of a standard "stop" sign. Thus we perceive the setting of an intersectional collision with usual result.

Sklar brought defendants' car to a stop several feet east of the stop sign. Here his view each way on Wyoming was partially obstructed. He proceeded slowly out into the intersection to a point where his car was "approximately even" with cars parked on the east side of Wyoming. Here his view to the northward—on and along Wyoming—was unobstructed for the length at least of a long city block. Continuing, as he says, to make observations each way, Sklar proceeded slowly out into the intersection with intention of continuing westward on Thatcher. He says, with respect to his observations northward, that he saw a car approaching from that direction. Such car, driven by witness Beyer, was on the occasion of Sklar's last observation "a little over 3/4 of the way down" (meaning 3/4 of the city block to northward). Sklar did not see the southbound motorcycle at any time. The motorcycle, proceeding straight ahead on the west side of Wyoming—at the plaintiff-testified rate of 20 to 25 miles per hour—, overtook and passed the southbound Beyer car when the latter was about 600 feet from the intersection of Thatcher. It collided in the intersection with the right rear portion of de-

fendant's car after that car had fully cleared the center line of Wyoming. The impact was severe, sufficient to drive the rear end of defendant's car southward and southwestward to extent of an arc measuring, according to witness Beyer, "between 45 and 60 degrees, I would say."

*First:* Citing *Zuidema* v. *Bekkering,* 256 Mich 327; *Kok* v. *Lattin,* 261 Mich 362; *Cramer* v. *Brictson,* 286 Mich 224; *Hubbard* v. *Canavara,* 295 Mich 499; *Heckler* v. *Laing,* 300 Mich 139; and *Carrothers* v. *French,* 309 Mich 340, plaintiffs insist that the trial judge should have found defendant Sklar guilty of causal negligence as a matter of law and that the jury, on their motion, should have been so instructed with respect to all 4 cases, leaving only the question of contributory negligence of plaintiff Wilson B. Lynn (and damages if allowed) open to jury consideration. Plaintiffs' motion in such regard is built upon the familiar (if not over-familiar; see discussion in *McKinney* v. *Yelavich,* 352 Mich 687, 697–699) proposition that the oncoming motor vehicle "was plainly there to be seen" and that Sklar, not having observed it at any time despite successive observations in that direction, must be held by the court as having negligently proceeded into and across the intersection with causal effect. The motion was properly denied considering *McKinney* and *Baker* v. *Gushwa,* 354 Mich 241, 247, and we find by force of *McKinney's* reasoning that the trial judge did not err either in refusing to direct a verdict for any one of the respective plaintiffs or in refusing to peremptorily instruct that defendant Sklar was guilty of causal negligence.* Whether a motorist of

---

* See *Parsons* v. *Hoffman,* 352 Mich 8, holding that a motion for directed verdict by the plaintiff in a negligence case is to be considered the same as a corresponding motion for directed verdict by the defendant, that is to say, the testimonial record and legitimate inferences to be drawn therefrom are to be considered in light most favorable to the party against whom the movant would have per-

reasonable prudence would and should, in the presented circumstances, have made timely discovery of imminent approach of the motorcycle depended on sharply disputed issues of fact (especially the contentious question whether the rate of approach-speed of the motorcycle was as claimed by plaintiffs). Manifestly, such issues were properly and exclusively solvable in the jury room.

*Second:* The trial judge instructed the jury:

"If the accident was unavoidable and did not result from any negligence of the defendant, then there can be no recovery by either plaintiff."

Relying on *McClarren* v. *Buck,* 343 Mich 300, plaintiffs say the quoted instruction was erroneous. We agree, for reasons given in *McClarren.* In most negligence cases, and so is it here, an allegation (whether denied or not) that the "accident" was "unavoidable" constitutes a false and immaterial issue. In these cases of Lober and Lynn the jury was properly instructed upon the triable issues of negligence, proximate cause and contributory negligence (and damages if right to recover damages be found). The trial judge should have stopped there. Why? Because the conflicting allegations and testimony of the parties admitted of no middle ground; no finding of an "unavoidable accident."

Plaintiffs' undeviating theory was and is that defendant Sklar was guilty of actionable negligence. Defendants' opposing and consistent theory is that the proximate cause of the collision was excessive speed of the motorcycle and careless driving thereof. Such were the issues to which and only which (plus the subject of damages) the trial judge should have confined himself in addressing the jury. One theory

---

emptory instruction. The only difference is that the plaintiff, bearing as he does the general burden of proof, finds his motion more difficult of persuasion and inducement.

or the other was right in point of fact. There was
no proof, or inference or claim from proof, that the
collision could have occurred without causally con-
nected negligence on the part of either, or both, of
the 2 vehicle operators. We hold in these circum-
stances that the quoted instruction constituted error.

*Third:* Was the quoted instruction prejudicial
and so reversible? We hold in negation. In *Gilson*
v. *Bronkhorst,* 353 Mich 148, a majority of our mem-
bership recorded dim view of allegations of re-
versibly erroneous jury instructions where the trial
judge's aberration is minor and complaining counsel
indicate—even on request of the trial judge for cor-
rective suggestions—no thought at the time that such
aberration is or will be prejudicial. Here, like *Gil-
son,* the trial judge inquired of counsel whether
they wished "anything else?" To this plaintiffs'
counsel responded with respect to other phases of
the charge but made no mention of the judge's jour-
ney into the realm of "unavoidable accident." In
these circumstances our ruling pursues *Gilson* and,
lest it be misunderstood, we affirm again that which
was said in *Gilson* by footnote (p 160):

"We do not intimate that counsel must except
to the charge either as to parts or the whole thereof.
Neither must objection be made to save for review
that which fairly amounts to reversible error of
instruction or failure of instruction. We do sug-
gest, following *Labar, Robertson and Kaminski,*[*]
that counsel will do well—preferably at chambers aft-
er the jury has retired—to call up for immediate re-
pair as indicated any apparent inadvertence or pos-
sibly confusing ambiguity of language the trial judge
has isolatedly employed. We judge the importance
of errors of such nature, and their consequent ef-
fect as being either reversible or harmless, in part

[*] *Labar* v. *Crane,* 56 Mich 585; *Robertson* v. *Hayes,* 261 Mich 200;
*Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417.—REPORTER.

by the attitude of counsel toward same when time yet remains to set things right in the jury room."

Generally, this conclusion was presaged by *Huffman* v. *First Baptist Church*, 355 Mich 437, 445, 446. On that occasion Mr. Justice VOELKER, having first redeclared the general rule that the presence or absence of reversible error of jury instruction is properly judged by reading and considering the charge as a whole, said for us:

"We are so often compelled to repeat this elementary proposition that we are moved to observe that it is probable that few trial judges, however experienced or learned, if given more time for meditation and research, would again give precisely the same jury instructions that they actually gave. Upon further reflection their instructions would doubtless be less halting and redundant, infinitely clearer and more cogent and more on target—much like the compelling jury arguments most lawyers make to their bedroom ceilings the night after the trial is over. It follows that the job of an appellate court in appraising jury instructions (usually given by the busy trial judge immediately following the tug and heat of the trial) is not to determine whether we would select his instructions as models of literary excellence and pearls of legal wisdom were we editing a form book on the subject; rather our role is mercifully more limited and our test less severe, namely: Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case? In other words, in the idiom of the day, we simply ask ourselves: Were the instructions understandable and did they give both sides a 'fair shake'? We must not also demand the subtle reasoning of a Socrates or the gem-like prose of a Walter Pater. Few jury verdicts anywhere would stand if that were the criterion."

No other allegation of error requires discussion. .Judgment affirmed.   Costs to defendants.

SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., ·concurred with BLACK, J.

DETHMERS, C. J., and CARR and KELLY, JJ., con- ·curred in result.